IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | : CASE NOS. 1:CR-08-017-01 |
| | :                 1:CR-08-017-02 |
| | : |
| **v.** | : |
| | : |
| **BRIAN GADSDEN** | : |
| **REGINALD GADSDEN** | : |

# M E M O R A N D U M

Before the court are four motions made by Defendants Brian Gadsden and Reginald Gadsden. Defendants seek a bill of particulars, discovery, and to suppress certain evidence. For the reasons that follow, the motions will be denied.

**I.      Background**

   **A.     Facts**

Allstar Autos is a car shop in Harrisburg, Pennsylvania owned by Gensi and Angelica Matos. On the morning of October 19, 2007, Ms. Matos made a complaint to a station manager of a local post office. The report indicated that the shop had been cased by at least two black men on October 18. The men had been inside the shop multiple times, inquiring about a package that had been delivered to the shop that day via the United States Postal Service. They were very intent on retrieving the package. One of the men brandished a gun and made a statement to the effect that they would "get the mailman on the route" or start "tracking the package." They said that they would return the following day, October 19.

There were additional people suspected of casing the shop. Among the vehicles identified as having been used to case the shop were a dark brown or

maroon Jeep Cherokee, a grey four-door Chrysler, a red four-door sedan possibly a Volvo, and a white minivan.

The post office station manager contacted the United States Postal Inspection Service to investigate the complaint. On the morning of October 19, 2007, the Postal Inspection Service contacted the Harrisburg Police Department to coordinate an investigation. Postal Inspector Joseph Corrado was assigned to the case, along with another Postal Inspector. Detective Victor Rivera and two additional Harrisburg Police Detectives were also assigned to the case. All officers were apprised of the substance of the complaint. The officers decided to begin their investigation at Allstar Autos.

They drove in two separate vehicles, with the Postal Inspectors in Corrado's unmarked Chevrolet Blazer and the Detectives in Rivera's unmarked Chevrolet Caprice Classic. When the vehicles pulled into the parking lot in front of Allstar Autos, Detective Rivera and Postal Inspector Corrado, independently of one another, became suspicious of the car parked across the street from the store. They saw a burgundy four-door Saturn sedan that was somewhat akin to the description of the cars in the complaint. They saw two black men in or around the car; one man was outside the vehicle, looking at the police vehicles and the store. One man was inside the burgundy sedan in the passenger seat. The person in the passenger seat, according to Detective Rivera, slunk down in his seat. The man outside the car, upon seeing the vehicles pull in to the parking lot, walked to the driver's side, entered the car, and drove off. The officers in the two vehicles conferred for a matter of seconds before they began pursuing the burgundy sedan. They suspected

that the men might have been involved in the events giving rise to the complaint made that morning.

Detective Rivera called for assistance in making a traffic stop of the burgundy Saturn. A number of Harrisburg police officers and police cars effected the traffic stop in the 1800 block of Derry Street. Once Defendants were outside of the Saturn, the officers conducted a pat-down search and requested that Defendants show identification. Defendants maintain that the officers did not pat them down and request identification, but instead reached into their pockets and grabbed their identification cards. Upon production of identification, the officers separated Defendants and placed them in two different police vehicles. They stayed in the vehicles for fifteen to twenty minutes.

Meanwhile, Detective Rivera and Postal Inspector Corrado returned in Corrado's Blazer to Allstar Autos. They informed the Matoses that they had detained two individuals in connection with their complaint from that morning. They asked Ms. Matos to accompany them to the site of the stop to identify the individuals.[1] She sat in a rear seat in the Blazer and rode with them to the scene.

Defendants were taken out of the police cars, either one by one or at the same time. During the identification, a police officer stood next to and held the arm of each Defendant. There were numerous additional officers on the scene, including detectives and patrol persons. There were police lights with their rotating blue and red lights activated. The block of Derry Street was closed to traffic. The Blazer

---

[1] Defendants charged Detective Rivera with taking their photo identification cards with him to Allstar Auto and showing their pictures to Ms. Matos before bringing her to the scene of the traffic stop to identify them in person. Detective Rivera testified at the suppression hearing that he left Defendants' identification cards with an officer at the traffic stop. His testimony was not contradicted and the court finds it credible.

drove slowly past, approximately thirty feet from where Defendants stood. Ms. Matos identified Defendants as two of the individuals who had been in and around her store the previous day, watching it and asking about the package delivered.

Upon the identification, Defendants were arrested and taken to the Harrisburg Police Station. They were placed in separate cells and held for about six hours. Detective Rivera came to Brian Gadsden's cell to take him to a different room for questioning. In the interview room were Brian, Detective Rivera, Postal Inspector Corrado, and another Postal Inspector. Brian testified that he did not receive *Miranda* warnings before the officers began to question him. Detective Rivera testified that he verbally apprised Brian of his *Miranda* rights, asked Brian if he understood his rights, and Brian confirmed that he did. Postal Inspector Corrado's testimony corroborates Detective Rivera's. The officers questioned Brian for some time, until Brian invoked his right to an attorney. The same sequence of events occurred with Reginald Gadsden.

### B.  Procedural History

On January 16, 2008, the United States filed an indictment against Defendants. They pled not guilty during their initial appearance before Magistrate Judge Smyser on February 12, 2008. Tom Thornton, of the Federal Public Defender, was appointed as counsel for Brian Gadsden. William Fetterhoff was appointed as counsel for Reginald Gadsden. On February 22, 2008, Defendants filed a joint motion for a bill of particulars (Doc. 38), a joint motion for discovery (Doc. 40),[2] and a joint motion to suppress certain evidence (Doc. 42), along with

---

[2] Discovery has been provided by the government and will be produced in the future as
(continued...)

supporting briefs for all.  On March 4, 2008, Defendants filed a joint motion to suppress additional evidence, and a brief in support thereof.  (Doc. 58.)  The government has opposed the motion for bill of particulars and the suppression motions.  A suppression hearing was held on March 19, 2008.  Accordingly, the issues are ripe for disposition.

**II.**       **Discussion**

     **A.**    **Motion for a Bill of Particulars**

Among other requirements, a criminal indictment must be precise enough to inform the defendant of the charges against which he must defend. *United States v. Schramm*, 75 F.3d 156, 163 (3d Cir. 1996).  When an indictment is "too vague and indefinite" to fulfill this purpose, a defendant may move for a bill of particulars under Federal Rule of Criminal Procedure 7(f).  *United States v. Addonizio*, 451 F.2d 49, 64 (3d Cir. 1971).  The purpose of a bill of particulars is to inform the defendant of the nature of the charge brought against him in a manner sufficient to prepare a defense; to avoid surprise during trial; and to prevent a second, subsequent prosecution for an offence that was inadequately described.  *Id.* at 63-64; *United States v. Grasso*, 173 F. Supp. 2d 353, 366 (E.D. Pa. 2001) (motion for bill of particulars is to provide defendant with enough information to conduct his own investigation, not provide him with the fruits of the government's investigation).  When an indictment is sufficiently clear for its stated purpose, a motion for bill of particulars is not well-taken.  *See United States v. Smith*, 776 F.2d

---

²(...continued)
necessary, thus the court will deny this motion as moot.

1104, 1111 (3d Cir. 1985) (observing that a motion for bill of particulars may not be used for discovery); *Grasso*, 173 F. Supp. 2d at 366.

Here, Defendants' motion for bill of particulars is not well-taken. The indictment against them on the count for which they seek clarity is definite and circumscribed. It charges that:

> [o]n or about the days before and including October 19, 2007, in Dauphin County, Pennsylvania, within the Middle District of Pennsylvania, [Defendants] did intentionally and knowingly conspire with each other and others known and unknown to the grand jury to possess with intent to distribute marijuana, a Schedule I controlled substance, in violation of Title 21, United States Code, Section 841(a). All in violation of Title 21, United States Code, Section 846.

(Doc. 1 at 3.) Defendants' motion seeks discovery. With respect to the conspiracy aspect of Charge III, which Defendants clearly identify as "the allegation of conspiracy," they seek information such as the "exact language, word or words allegedly used by the defendant which allegedly indicated, or intended to indicate, that he willfully and knowingly agreed to commit the crime charged in the indictment" and the "nature of the act, the date, time, and place, of the said act, by which [either Defendant] first manifested that he was part of the alleged conspiracy." (Doc. 38 ¶ 5(a).) Rather than indicating confusion as to the charge against them, Defendants demonstrate acute awareness that 1) they are charged with conspiracy and, moreover and 2) the elements of conspiracy that the government is required to prove. The requests with respect to the charge of possession with intent to distribute reflect a similar well-developed grasp of the charge and its elements. It is evident that Defendants do not seek to clarify the indictment, they seek discovery of the evidence in support of the government's case. For this reason, Defendants' motion for a bill of particulars will be denied.

6

### B. Motions to Suppress Evidence

Defendants' motions to suppress evidence arise from three distinct points in the chronology of their interaction with law enforcement: the initial traffic stop,[3] the identification by Ms. Matos, and their interrogation at the Harrisburg Police Department. The court will address each argument in turn.

### 1. The Traffic Stop

When a police officer "accosts an individual and restrains his freedom to walk away, he has 'seized' that person" for purposes of the Fourth Amendment. *Terry v. Ohio*, 392 U.S. 1, 16 (1968). A police officer "may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000); *accord Delaware v. Prouse*, 440 U.S. 648, 663 (1979). Reasonable suspicion is something more than an inchoate hunch. *Wardlow*, 528 U.S. at 124. The officer must have at least "some minimal level of objective justification for making the stop." *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (quotation omitted). The government bears the burden of showing that the officers who initiated the traffic stop here had a reasonable suspicion that criminal activity was afoot. *United States v. Ritter*, 416 F.3d 256, 261 (3d Cir. 2005). Whether the officers had a reasonable suspicion depends on the totality of the circumstances. *Sokolow*, 490 U.S. at 7.

---

[3] Initially, Defendants argued that the subsequent search of their vehicle was made without a warrant, without probable cause, and without their consent. Testimony at the suppression hearing was clear that the search was made pursuant to a warrant. Defendants do not challenge the lawfulness of the warrant.

In light of the evidence presented, the government has met its burden. The information provided to the investigating officers on the morning of October 19, 2007 was the following: someone from Allstar Autos had made a complaint to the manager of a postal station that morning. The complaint indicated that the store had been cased during the previous day by at least two, maybe up to five, people. At least two of the people involved were black men. There had been some sort of threat to a postal carrier and a weapon had been brandished. The persons casing the store said that they would return that very day, October 19. The complaint identified the vehicles possibly associated with the persons casing Allstar Autos. They were a dark brown or maroon Jeep Cherokee, a grey, four-door Chrysler, a red four-door sedan possibly a Volvo, and a white minivan.

When Detective Rivera and Postal Inspector Corrado arrived at Allstar Autos on the morning of October 19, they saw a tableau that was similar, if not identical to the picture painted by the complaint filed that morning. They saw two black men in or around a burgundy sedan. The men appeared to be watching or casing Allstar Autos. When the police pulled into the shop's parking lot in their unmarked, but ostensible police vehicles, the men left immediately. These facts were sufficient to create reasonable suspicion for the officers to make an investigatory stop. The officers' actions were lawful, thus Defendants' motion to dismiss will be denied on this ground.

### 2. **The Identification**

Defendants seek to suppress the identification made by Ms. Matos because it was unnecessarily suggestive and there was a substantial risk of misidentification. *See Neil v. Biggers*, 409 U.S. 188, 198 (1972). Accordingly, they

argue, admitting evidence of the identification at trial would result in a violation of their due process rights.  To determine the question, this court relies on *United States v. Stevens*, which articulated a two-pronged test under Supreme Court precedent for establishing whether an identification must be suppressed.  935 F.2d 1380, 1389 (3d Cir. 1991).

> The first question is whether the initial identification procedure was "unnecessarily" or "impermissibly" suggestive.  This inquiry actually contains two component parts:  that concerning the suggestiveness of the identification, and that concerning whether there was some good reason for the failure to resort to less suggestive procedures.  If a procedure is found to have been unnecessarily suggestive, the next question is whether the procedure was so conducive to mistaken identification or gave rise to such a substantial likelihood of misidentification that admitting the identification would be a denial of due process.

*Id.* (quotations, citations, alterations, and footnote omitted).  Among other factors to consider in determining the likelihood of misidentification, the court must consider 1) the witness's opportunity to view the criminal during the crime; 2) the witness's degree of attention to the criminal during the crime; 3) the accuracy of any prior description of the criminal by the witness; 4) the level of certainty demonstrated by the witness at the confrontation; and 5) the length of time between the crime and the confrontation.  *Neil*, 409 U.S. at 198; *accord United States v. Mathis*, 264 F.3d 321, 330 (3d Cir. 2001).  The burden is on the government to demonstrate that admitting the identification during trial would not deny Defendants due process.

As to the first question of the first prong, whether the identification procedure was suggestive, the court cannot but conclude that it was.  Ms. Matos was told that the police had identified and stopped two persons suspected of being involved with the events in her complaint.  She was placed in a police vehicle to identify the men.  From that vantage point, she saw Defendants surrounded by an

array of plainclothes and uniformed police officers and numerous police cars stopped in their immediate vicinity. Defendants were extracted from cars and displayed to her while being held by police officers. There were no black men other than Defendants presented as potential suspects. The diorama before Ms. Matos was highly suggestive that the suspects had been caught. As to the second question of the first prong, whether there was a good reason for the failure to resort to a less suggestive procedure, no evidence was presented directly on point.

Assuming without deciding that the initial identification procedure was unnecessarily suggestive, the court turns to the second *Stevens* prong to ask whether the procedure was so conducive to mistaken identification or gave rise to such a substantial likelihood of misidentification that admitting Ms. Matos's identification of Defendants would violate their rights to due process.[4] Ms. Matos had multiple opportunities to see Defendants' faces and builds during the crime. The Supreme Court noted in *Manson v. Brathwaite* that "[u]sually the witness must testify about an encounter with a total stranger under circumstances of emergency or emotional stress. The witness' recollection of the stranger can be distorted easily by the circumstances or by later actions of the police." 432 U.S. 98, 112 (1977). This is not the case at bar. Here, there was credible testimony that during the course of the previous afternoon, Ms. Matos had repeatedly seen and interacted with the persons

---

[4] The government represented that Ms. Matos was present in the courthouse during the suppression hearing, but did not call her as a witness. Because some of the factors that go to whether an identification is sufficiently reliable to be admitted at trial turn on what the witness knew and thought, her testimony would have been highly relevant and most persuasive. Because she did not testify, however, the court is left with hearsay testimony from Detective Rivera and Postal Inspector Corrado about her experience. Although the Federal Rules of Evidence apply to suppression hearings otherwise, *see* Fed. R. Evid. 1101(d), this court may rely on hearsay testimony in disposing of a motion to suppress. *United States v. Raddatz*, 447 U.S. 667, 679 (1980); *Brosius v. Warden*, 278 F.3d 239, 246 n.4 (3d Cir. 2002).

she identified as Defendants.  They did not obstruct her view of their faces and builds on October 18 by using masks or scarves.  They were similarly unobstructed when she identified them on October 19.  They had aroused her suspicions, thus she was more attentive to their appearance than she might have been to the appearance of an ordinary or even repeat customer.  This was not a bank robbery that lasted thirty seconds among chaotic circumstances.  This was an afternoon of conversation.

There was no evidence presented that Ms. Matos gave a prior description of Defendants as anything other than black males.  Detective Rivera, who was in the Blazer with Ms. Matos, testified that she identified Defendants as the individuals who had been in her store the previous day asking about the package.  There was no evidence that her identification wavered.  She made the identifications less than twenty-four hours after Defendants had been in her store.  In light of all of these facts, the court finds that the extent of Ms. Matos's interaction with Defendants enabled her to make a reliable identification at the scene of the traffic stop, in spite of the highly suggestive circumstances.  Admitting evidence of the identification at trial will not violate Defendants' due process rights.

### 3.     The *Miranda* Warnings

It is the government's burden to show that Defendants were apprised of their *Miranda* rights.  *See Miranda v. Arizona*, 384 U.S. 436, 475 (1966); *United States v. Tyler*, 164 F.3d 150, 156 (3d Cir. 1998) (government must establish a valid waiver of *Miranda* rights).  The government has made a successful showing.  The court finds not credible Defendants' assertion that they were not given *Miranda* warnings before being interrogated.  Detective Rivera and Postal Inspector Corrado testified that Detective Rivera informed both Brian Gadsden and Reginald Gadsden

of their rights immediately before beginning their respective interrogations. Both men acknowledged that they understood the warnings. Brian Gadsden's contradictory testimony is not credible and the court is without information from Reginald Gadsden as to whether he received the warnings. Moreover, both Defendants demonstrated an awareness of their rights when, after a period of questioning, each stopped the interview with a demand to see a lawyer. This demand is not conclusive proof that they received appropriate *Miranda* warnings before the investigation began, but supports the testimony by Detective Rivera and Postal Inspector Corrado. Accordingly, Defendants' motion will be denied on this ground.

## IV.     Conclusion

For the foregoing reasons, Defendants' motions to suppress evidence, for a bill of particulars, and for discovery will be denied. An appropriate order will follow.

        s/Sylvia H. Rambo
        SYLVIA H. RAMBO
        United States District Judge

Dated: March 24, 2008.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**UNITED STATES OF AMERICA**     :    **CASE NOS. 1:CR-08-017-01**
                                                                :                      **1:CR-08-017-02**

         **v.**                                                            :

**BRIAN GADSDEN**                           :
**REGINALD GADSDEN**               :

## **O R D E R**

In accordance with the foregoing memorandum of law, **IT IS HEREBY ORDERED THAT**:

       1) Defendants' motion to suppress certain evidence (Doc. 42) and supplemental motion to suppress certain evidence (Doc. 58) are **DENIED**.

       2) Defendants' motion for a bill of particulars (Doc. 38) is **DENIED**.

       3) Defendants' motion for discovery (Doc. 40) is **DENIED AS MOOT**.

                                                            s/Sylvia H. Rambo
                                                            SYLVIA H. RAMBO
                                                            United States District Judge

Dated: March 24, 2008.